THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN FETTER, Defendant-Appellant.

Second District No. 2—90—0024

Opinion filed April 10, 1992.—Rehearing denied May 27, 1992.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, and G. Edward Moorman, of Williamson, Webster, Groshong, Moorman & Falb, of Alton, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial, defendant, John Fetter, was found guilty of two counts of aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(6)) and not guilty on counts charging burglary and a third aggravated battery. He was sentenced to seven years in the Department of Corrections on each of the aggravated battery convictions. The sentences were ordered served consecutively. On appeal, the defendant urges that the trial court erred by (1) failing to have the jury instructions specify which aggravated battery count applied to which victim; (2) refusing defendant's tendered self-defense instructions; and (3) imposing consecutive sentences.

The relevant facts indicate that the charged burglary occurred on June 24, 1989, at Hanson Engineers, Inc., in Rockford. Officers Hoshaw, Vandiver and Dock of the Rockford police department encountered defendant during their investigation of the burglary. As a State's witness, Officer Vandiver testified that, on June 24, 1989, while talking to defendant inside his hotel room, evidence linking defendant to the Hanson Engineers burglary was observed. When Vandiver grabbed defendant's arm in an effort to control his movement, a struggle ensued during which defendant bit Vandiver's arm, drawing blood, and later requiring medical attention in the form of antiseptic and a bandage. Vandiver denied hitting or striking defendant. On direct examination, Vandiver testified he grabbed defendant's arms when defendant attempted to quickly exit the room. On cross-examination, Vandiver stated he grabbed defendant's arm when he attempted to answer the telephone in his room. On redirect examination, in answer to the question, "Any injuries to you?" Vandiver stated, "Not to my [sic] personally."

Officer Hoshaw testified that, during the conversation with defendant in his hotel room, Officer Vandiver grabbed defendant's arm as he turned to answer the telephone whereupon defendant started to fight. During the five-minute struggle to restrain him, defendant bit Hoshaw's hand causing him great pain and leaving a circular pattern of tooth marks which were visible for the following six to eight weeks. On cross-examination, Hoshaw stated that defendant bit him on the hand after Hoshaw applied to defendant's wrist a pain compliance technique called a "gooseneck hold." Hoshaw stated that, when his hand was bitten, he used his head to butt the top of defendant's head. Hoshaw further stated that during the struggle to subdue defendant he observed Officer Dock hit defendant in the upper chest and face area.

Officer Dock testified that, after defendant was handcuffed and escorted outside, he was searched. During the search defendant forcibly ran into the officer. As Dock pushed him away, the defendant bit Dock's wrist. To release defendant's bite hold, Dock used his knee to strike defendant three times in the head/neck area. The bite caused swelling and left a bruise lasting several days but did not break the skin.

The defendant did not testify at the trial. However, his oral confession to the burglary was admitted as part of the State's case in chief. The aggravated battery charges were not addressed in the confession.

The aggravated battery charges against defendant were based on the bite wounds sustained by the police officers. However, defendant contends that the court erred in failing to instruct the jury as to which aggravated battery count pertained to which police officer. Defendant correctly points out that the headings of the jury verdict forms do not specifically provide the name of each officer but refer only to respective counts. For example, the guilty verdict form for count II stated:

> "*No. 89—CF—887—(Count II)*
>
> We, the jury, find the defendant, John Fetter, guilty of Aggravated Battery, as charged in the Information."

There was a similar not guilty verdict form for count II and similar guilty and not guilty verdict forms for counts III and IV.

Defendant further emphasizes that the written instruction given to the jury did not help to clarify the victim involved in each count. In pertinent part, the issue instruction was in the following form:

> "To sustain the charge of aggravated battery, the State must prove the following propositions:
>
> 1. That the defendant knowingly or intentionally without legal justification caused bodily harm to John Horshaw [*sic*]; and
>
> 2. Knows the individual harmed is a peace officer engaged in the execution of any of his official duties; and
>
> 3. That the defendant was not justified in using the force which he used.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Similar form issue instructions containing the names of Officers Vandiver and Dock were read to the jury. However, nowhere in the written instructions was the jury informed that count II pertained to Officer Hoshaw, count III pertained to Officer Vandiver, or that count IV pertained to Officer Dock.

Defendant argues that the written instructions and verdict forms confused the jury as evidenced by their not guilty verdict as to Officer Vandiver on count III, which, according to defendant, was the strongest case against him. The State responds initially that defendant has waived this issue on appeal by failing to raise the objection at the conference on instructions, to tender instructions without the claimed error, or to raise the claimed error in his post-trial motion. The State

further argues that, even if there was no waiver, the instructions and verdict forms were proper. We agree that the issue of unclear instructions confusing the jury is waived.

■ The general rule with regard to criminal jury instructions is that the burden of preparing instructions is primarily on the parties, not the trial court. The trial court is under no obligation to give instructions not requested by counsel or to rewrite instructions tendered by counsel, and no party may raise on appeal the failure to give an instruction unless he has tendered it. (*People v. Carlson* (1980), 79 Ill. 2d 564, 583-84.) In addition, the failure to object at trial to an asserted error in jury instructions generally waives the issue on appeal (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180) as does the failure to raise the issue in a written post-trial motion (*People v. Enoch* (1988), 122 Ill. 2d 176, 186). We need only review issues a defendant raises for the first time on appeal if the record reflects "plain error." (*Enoch*, 122 Ill. 2d at 190-91.) Plain error is an error which deprives the defendant of a fair and impartial trial or any substantial error which occurs in cases where the evidence is closely balanced. *People v. Schmidt* (1988), 168 Ill. App. 3d 873, 878.

■ In applying these principles we find that, according to the record, defendant failed to tender jury instructions curative of his claimed error, failed to object to the error at the instruction conference, and failed to raise the issue in his post-trial motion. Accordingly, defendant has waived the issue of jury instruction error resulting from the court's failure to specify in the jury verdict forms which aggravated battery count applied to which victim.

Additionally, we conclude that no plain error occurred. The record reveals that the judge, in presenting the instructions and verdicts, orally advised the jury which aggravated battery count related to which victim. Brief explanatory remarks concerning the forms of verdicts are permissible. (*People v. Pastorino* (1980), 90 Ill. App. 3d 921, 925.) We believe the trial judge's oral explanation to the jury that count II applied to Officer Hoshaw, count III to Officer Vandiver, and count IV to Officer Dock was sufficient to overcome defendant's claim of confusion in the jury instructions. Although defendant argues that the not guilty verdict on the aggravated battery count for Officer Vandiver evidences that the court's failure to specify which count applied to which victim resulted in substantial error, we find a reasonable basis for the jury's not guilty verdict premised on Vandiver's inconsistent testimony as to whether he suffered an injury.

Defendant next argues that the court erred in imposing consecutive sentences by considering improper factors and by relying on sec-

tion 5—8—4(a) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(a)) as statutory authority therefor. The State again counters that defendant has waived these issues by failing to object at the sentencing hearing or to raise the issues in an appropriate post-trial motion. Absent waiver, the State argues that the trial court's sentence was proper because section 5—8—4(b) supports defendant's consecutive sentences, and the court considered only proper factors in imposing sentence.

Although the general rule in Illinois is that the failure to object at trial constitutes a waiver, it is well established that in the interest of justice a reviewing court may consider all questions which appear to affect substantial rights of the parties. (*People v. Martin* (1988), 119 Ill. 2d 453, 458; see also 134 Ill. 2d R. 615.) Because defendant's claim of error at sentencing affects fundamental liberty rights, we will examine his claim pursuant to our authority under Supreme Court Rule 615.

While defendant argues that the court erred in imposing consecutive sentences pursuant to section 5—8—4(a) of the Code, it is clear from the record that consecutive sentences were imposed not under section 5—8—4(a), but under section 5—8—4(b) of the Code. The trial judge stated that consecutive sentencing was appropriate pursuant to *People v. Partee* (1987), 157 Ill. App. 3d 231, and *People v. Craig* (1977), 47 Ill. App. 3d 242. In both *Partee* and *Craig*, the defendant was sentenced consecutively pursuant to the provisions of section 5—8—4(b), which provides:

> "The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b).

■ We agree with defendant's argument that section 5—8—4(a) would not authorize consecutive sentences under the facts presented in defendant's case. We recently addressed similar questions in *People v. Bole* (1991), 223 Ill. App. 3d 247, *appeal allowed* (1991), 144 Ill. 2d 636, and *People v. Dooley* (1992), 227 Ill. App. 3d 1063, and concluded that the statutory provision in section 5—8—4(a) was intended to apply only to situations where the relevant offenses occurred during a single course of conduct. The record before us reflects that the respective aggravated battery offenses to Officer Hoshaw and Officer Dock were not part of a single course of conduct. Separate victims

were involved and the criminal acts were separated in time and location. Hence, the offenses involved different proofs. The same or similar factors existed in *Partee, Craig, Bole* and *Dooley.*

■ Next defendant argues that the judge abused his discretion in considering good-time credit as a factor in imposing consecutive sentences. The judge stated he wanted the defendant to serve seven years in the penitentiary, adding that, taking good time into consideration, consecutive sentences would be 3½ and 3½ years. In *People v. Clankie* (1989), 180 Ill. App. 3d 726, 732, we held that the trial court's consideration of good behavior credit is a permissible consideration in sentencing. (See also *People v. Torgeson* (1985), 132 Ill. App. 3d 384, 389.) Neither *Clankie* nor *Torgeson* is a consecutive sentence case. Defendant asks that we find that consideration of good-time behavior credit as a factor in consecutive sentencing cases constitutes an abuse of discretion. This we refuse to do. In *Torgeson,* we stated:

> "In the absence of any authority to the contrary, we see no reason why a sentencing judge may not consider, as one factor, the realities of the sentencing law in fashioning a sentence which is reflective of both the seriousness of the offense and the defendant's rehabilitative potential. A sentencing judge does not act in a vacuum, nor can he be expected to disregard the possibility of good-time credit which is inherent in every sentence of imprisonment. [Citation.] *** [A] sentencing court may properly determine the minimum amount of actual incarceration which is appropriate in light of the seriousness of the offense and the history and character of the defendant." (*Torgeson,* 132 Ill. App. 3d at 389.)

We believe the reasoning of *Torgeson* applies equally well to the imposition of consecutive sentences.

■ Defendant next argues that the judge erred by considering the possibility of AIDS as a sentencing factor. The judge commented that he found the act of biting most disturbing, and if the victims had gotten AIDS from the bite the charge would be murder rather than aggravated battery. We find such remarks inappropriate because they were grounded on mere speculation. The record shows no connection between the medical condition commonly known as AIDS and the defendant, the bites, or the two victims. We do not find the comments sufficient, however, to warrant resentencing.

■ Sentencing is a matter for the discretion of the trial court and will not be reversed absent a showing of abuse of such discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) The particular circumstances of each case must form the basis of any reasoned judg-

ment as to the proper penalty to be imposed. (*Perruquet*, 68 Ill. 2d at 154.) Before reversing a sentence imposed by the trial court it must be clearly evident that the sentence was wrongfully imposed. (*People v. Ward* (1986), 113 Ill. 2d 516, 526.) In making the determination, the reviewing court should not focus on a few words or statements of the trial court; rather, the determination of whether the sentences were improper must be made by considering the entire record as a whole. (*Ward*, 113 Ill. 2d at 526-27.) The record here supports the sentences imposed.

At defendant's sentencing hearing, the judge commented that three things struck him more than others: that defendant had been in the penitentiary on three prior occasions, that he was involved in 35 burglary cases, and the fact that the defendant bit the police officers. The judge stated that he considered the history, character and condition of the defendant; the nature and circumstances of the offense; and the public interest; and concluded that a sentence of imprisonment was necessary for the protection of the public and in the interest of the public. The record reflects that defendant was involved in 30 to 35 burglaries, served time in the penitentiary on three occasions, and had been involved in the use of drugs. His criminal activities spanned a period of approximately 14 years. Upon reviewing the record in its entirety, we cannot say that it is clearly evident that the defendant's sentence was improperly imposed.

■ Defendant's concluding argument is that the court erred in refusing his instruction No. 14, which was a non-Illinois Pattern Jury Instruction (IPI). Supreme Court Rule 451 (134 Ill. 2d R. 451) provides that, unless the IPI Criminal instructions applicable to the case fail to accurately state the law, the IPI Criminal instructions shall be used. Further, according to the rule, whenever IPI Criminal does not contain an instruction on the subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument. The decision to give non-IPI instructions rests in the sound discretion of the trial court. *People v. Stamps* (1982), 108 Ill. App. 3d 280, 298.

Here, the State's instruction No. 14 provided:

"A person is not authorized to use force to resist an arrest which he knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest is in fact unlawful."

In contrast, defendant's instruction No. 14 provided:

"The use of excessive force by a police officer invokes the right of self-defense."

We note that although the State's instruction No. 14 is shown on the face of the instructions as a non-IPI instruction, it is in fact Illinois Pattern Jury Instruction, Criminal, No. 24—25.20 (2d ed. 1981), slightly modified. It is not disputed that defendant's instruction is non-IPI.

The State asserts that the court properly refused defendant's instruction No. 14 because it was a non-IPI instruction. Defendant insists that the disputed instruction was appropriate based on the following language in *People v. Bailey* (1982), 108 Ill. App. 3d 392:

"In Illinois, an individual may not use force to resist an arrest which he or she knows is being made by a peace officer, even if he or she believes that the arrest is unlawful and it is in fact unlawful. (Ill. Rev. Stat. 1979, ch. 38, par. 7—7.) This rule is qualified, however, in that it does not apply to a situation in which an officer uses excessive force. *The use of excessive force invokes the right of self-defense.* (Ill. Rev. Stat. 1979, ch. 38, par. 7—1.)" (Emphasis added.) *Bailey*, 108 Ill. App. 3d at 398.

Defendant urges that the law set forth in *Bailey*, and specifically the qualifying language used by the *Bailey* court which we have emphasized above, requires the court to give his instruction No. 14 whenever IPI Criminal 2d No. 24—25.20 is used. There is no merit to this contention.

We initially note that defendant tendered IPI Criminal 2d No. 24—25.06 at the instruction conference and the court gave it to the jury. That instruction covers the subject of defendant's right to self-defense. It provides:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force." (Illinois Pattern Jury Instructions, Criminal, No. 24—25.06 (2d ed. 1981).)

Thus, the jury was instructed on the issue of self-defense. The language that defendant relies on in *Bailey* (108 Ill. App. 3d at 398) ("the use of excessive force invokes the right of self-defense") is merely the reviewing court's invocation of section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 7—1), upon which IPI Criminal 2d No. 24—25.06 was based (see Committee Notes), and is not a necessary addition to the instruction that a person is generally not authorized to use force to resist arrest by a peace officer.

We find no abuse of the court's discretion in refusing defendant's instruction No. 14, which is in essence a generalized regurgitation of a reviewing court's interpretory language of a criminal statute which is provided *in haec verba* in IPI.

For the above reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

GEIGER and UNVERZAGT, JJ., concur.